IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.                                                      Case No.  1:24-mj-56

SIRRI WEBB,

            Defendant.

AFFIDAVIT IN SUPPORT OF A

CRIMINAL COMPLAINT AND ARREST WARRANT

I, Timothy Alley, being duly sworn, depose and state as follows:

**INTRODUCTION**

1.      I am a Deputy United States Marshal (DUSM), and I am currently assigned to the Eastern District of Virginia and detailed to the Capital Area Regional Fugitive Task Force (CARFTF).  I have been a DUSM since April 2009.  As a DUSM I am authorized to investigate violations of the laws of the United States, and I have been involved with several criminal investigations involving violations of federal law.  I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States.  See 28 U.S.C. § 566 (d).

2.      As DUSM, I have investigated and assisted in the investigation of violations of federal law involving failing to register as a sex offender, possession of a firearm by a prohibited person and escape.  In the course of conducting these investigations, I have used many different investigative techniques, including:  interviewing and serving as the handler for informants and

cooperating sources; conducting physical surveillance; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen registers, caller identification data, social media communication records, as well as other information stored within cellular telephones and social media accounts; conducting court-authorized electronic surveillance including the use of cellular phone technology, cellular towers, and the analysis of historical cellular phone records for the purpose of determining the approximate location from which a phone was used at the particular time or range of times.  I am a certified TASER instructor and have received many hours of tactical instruction regarding breaching and clearing, tactical entries, vehicle maneuvers and basic first aid.  I have assisted federal, state, and local partners on hundreds of arrest endeavors, within the Eastern District of Virginia and within other judicial districts.

3.     The facts in this affidavit come from personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. All observations not personally made by me were relayed to me by individuals who made them or are based on my review of reports, documents, and other evidence obtained during the course of the investigation. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience, I know that it is a violation of Title 18, United States Code, Section 924(c)(1)(a) "…any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the

punishment provided for such crime of violence or drug trafficking crime." I submit this affidavit in support of a criminal complaint and arrest warrant charging Sirri WEBB (hereinafter "WEBB") with possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(a).

## PROBABLE CAUSE

1.     WEBB was wanted out of Prince William County (PWC) Virginia, for a domestic charge, threats to kill and two threats to kill law enforcement (1/22/2023, Warrant Number 153JM2000037526).

2.     WEBB fled the scene of the original domestic incident in a black Chrysler 300 with Virginia tag TWJ9172. This vehicle was registered to a L.C. and J.C. of Russell Road, Alexandria, Virginia. However, information was given to DUSM Alley that WEBB had changed the plate on the vehicle to Virginia tag TPX1225. This plate returns to J.W. of Arabian Trail, Spotsylvania, Virginia.



3.      Information was developed that WEBB was living at 7663 Oakridge Woods

Court, Unit B3, Lorton, Virginia.

4.      During surveillance of this building, the week prior to the arrest date, a red Honda

Pilot with Virginia tag UAN5974, registered to C.S. of Woodbridge was seen parking in front of

the target building.  C.S. was observed entering the target building and walking up to Unit B3.

Based on the work DUSM Alley has done attempting to locate WEBB, DUSM Alley knows that

C.S. is the mother to at least one of WEBB's children.  C.S. was only in the apartment for a few minutes.  When she departed the apartment, she was seen with a baby seat, which she placed in her vehicle and then departed the area.

5.      DUSM Alley, using law enforcement databases, was able to locate a lease for a man named P.I. for Unit B3.  However, upon further investigation it was determined that Unit B3 in the 7663 building was rented in P.I.'s name without his knowledge or permission.  It appears that P.I.'s name, social security number, date of birth, identification along with a fraudulent pay stub were used without his knowledge to secure rental of the unit.

6.      On January 18, 2024, DUSM Alley was able to locate the Chrysler belonging to WEBB parked on Oakridge Woods Court, Lorton, Virginia.



7.      At about 1100 hours on January 18, 2024, DUSM Alley and other task force officers (TFOs) began surveillance of the target vehicle.  During this period DUSM Alley exited his vehicle and went up to unit B3 to attempt and determine its occupancy status.  While the

DUSM was in the common area in front of B3, the DUSM heard a male and female arguing, loudly.  DUSM Alley could not determine, by listening to the male's voice, if that man was WEBB.  There are four units on each floor in this apartment building, but two of those units on the 3rd floor are vacant.  Only B3 and the unit diagnol from B3 were occupied, therefore it was very clear to DUSM Alley that the arguing could only be coming from B3.



8.      At 1339 on January 18, 2024, DUSM Alley was able to locate a phone number for P.I.  DUSM Alley contacted P.I. and explained to him what was going on with the leasing of the apartment and how the lease was obtained.  DUSM Alley had this conversation in front of the Guest Relations Coordinator for the Woods Apartment Complex, who also confirmed to P.I. that his information was used to secure the apartment.  DUSM Alley asked P.I. if the police could enter the apartment.  P.I., in the presence of the Guest Relations Coordinator, verbally agreed to allow the DUSMs and TFOs to enter the apartment.  DUSM Alley then secured a key for Unit B3.

9.      At 1530 on January 18, 2024, DUSMs and TFOs approached Unit B3 within 7663 Oakridge Woods Court to locate and arrest WEBB.  Wearing "USMS" and "Police" insignias the team approached and began to knock.  DUSM Alley knocked loudly on the door, shouting "P.I., police with an arrest warrant."  Commotion was heard coming from within the apartment, and dogs began to bark, but nobody answered the door.  Again, DUSM Alley knocked on the door and repeated his original command, but this time adding that the door was going to be knocked down.  Again, there was no answer.  DUSM Alley knocked a third time, but still nothing.  DUSM Alley then used a key and attempted to open the door.  The door was being held shut from the inside, by a door stop device, but the team was able to force it open.



10.     WEBB was immediately seen standing in the living room and was taken into custody without incident.  Another man later identified as M.R. was detained and brought into the hallway in front of the apartment.  His identity was run in NCIC and came back without any outstanding warrants and was allowed to depart.

11.     During the protective sweep of the apartment DUSMs and TFOs saw, in plain view, multiple stacks of money, marijuana packaged in glass jars, baggies, a scale with white powder residue, a semi-automatic shotgun, a box of "magic" mushrooms and the end of a drum magazine sticking out from under an air mattress, records and documents with the name "Sirri WEBB", and Chrysler keys with a safe key on the keyring.

12.     The air mattress was resting strangely on the drum magazine, and it appeared as if someone could be hiding under the mattress.  DUSMs and TFOs lifted the air mattress checking

for people but discovered more guns being stored under the air mattress.  Fairfax TFOs contacted

their narcotics division, who surveyed the scene and then returned with a search warrant.  The

photographs of the air mattress and drum magazine were taken after the protective sweep to

provide this Court will a recreation of the scene encountered during the sweep.























13.     All firearm serial numbers were run in NCIC.  A Glock 357 with serial number

CFR731 came back as stolen.

14.     At about 2100 hours on January 18, 2024, the search of apartment B3 was complete, and all evidence was taken by Fairfax County Police detectives.   DUSM Alley secured the deadbolt lock with the key and was the last officer out of the apartment.

15.     Prior to the transportation of WEBB, Immigrations and Customs Enforcement (ICE) agent John Parodi, in the presence of a Fairfax K9 officer, who was recording on body cam, asked WEBB if he had used any drugs or had been smoking marijuana.  SA Parodi asked if WEBB had been doing any drugs that were harder than marijuana, but WEBB replied that he only smoked weed.  WEBB further stated that he has been using marijuana for many years and smokes it every day.

16.     On February 13th, 2024, DUSM Alley received the following list concerning items and amounts of suspected narcotics located within the residence: (at present time all drug weights and amounts are preliminary because the precise information is pending laboratory examination.  These weights and identification were conducted by DEA SA's Johnston and Fazio on a DEA MX908 narcotics detection machine.)

      **a.**   8 firearms, all of which were loaded, but no firearm had a round chambered when recovered.

      **b.**   MX908: cocaine (the MX908 machine does not differentiate between crack cocaine and cocaine HCl).   A "cake" of a hard white substance, suspected crack cocaine.  Fairfax County PD case 2024-0180220, property ID 1615232, 510 grams.  This field test result has been confirmed.

      **c.**   MX908: methamphetamine.   A vial of multicolored pills, suspected Methamphetamine. Fairfax County PD case 2024-0180220, property ID 1615233, 68 grams.  This field test result has been confirmed.

**d.** MX908: N,N-dimethylpentylone (a synthetic cathinone; one of the substances marketed as ecstasy, i.e. marketed as MDMA). Chunk of white hard substance, suspected N,N-dimethylpentylone. Fairfax County PD case 2024-0180220, property ID 1615235, 67 grams. This field test has been confirmed.

**e.** MX908: "No Target Detected." Brown powdery substance, suspected heroin. Fairfax County PD case 2024-0180220, property ID 1615236, 61 grams. This field test result has been confirmed.

f. MX908: cocaine. A vial of white pills suspected cocaine. Pills are pressed with the markings of oxycodone. Fairfax County PD case 2024-0180220, property ID 1615237, 62 grams. This field test result has been confirmed.

g. MX908: cocaine. Chunky white hard substance, suspected cocaine. Fairfax County PD case 2024-0180220, property ID 1615238, 318 grams. The DEA has not been able to confirm this field test result to date.

h. MX908: N,N-dimethylpentylone. Multiple baggies of a hard white substance, suspected N,N-dimethylpentylone. Fairfax County PD case 2024-0180220, property ID 1615242, 509 grams. The DEA has not been able to confirm this field test result.

i. MX908: "No Target Detected." White hard substance, suspected cocaine. Fairfax County PD case 2024-0180220, property ID 1615245, 229 grams. The DEA has not been able to confirm this field test result.

j. 1118 grams of a green leafy substance, which is suspected to be marijuana was found but not tested by the MX908 machine.

      k.   130 grams of a grey organic material, which is suspected to be mushrooms was found but not tested by the MX908 machine.

      **l.**   $7,080 in US currency.

17.    WEBB was transported to the Fairfax Police Headquarters by patrol officers,

Respectfully submitted,

*Timothy Alley*

Timothy Alley
Deputy US Marshal
United States Marshals Service

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 by telephone on February 22, 2024.

HON. WILLIAM B. PORTER
UNITED STATES MAGISTRATE JUDGE